PEOPLE v. LYLE BROWN

1. ROBBERY—PRELIMINARY EXAMINATION—PROBABLE CAUSE—ARMED
   ROBBERY—AIDING AND ABETTING.

   Ample grounds existed for binding the defendant over for trial
   on the charge of aiding and abetting an armed robbery al-
   though there was no showing that he knew a gun was present
   or was to be used in the robbery where there was testimony
   that the defendant had set up the robbery by giving the rob-
   bers information on the building, the banking procedure, and
   the people who would be present, that defendant received part
   of the proceeds of the robbery, and that the defendant had
   disposed of the gun used in the robbery.

2. CRIMINAL LAW—PARTICIPANTS—RES GESTAE WITNESSES.

   The prosecution has no obligation to indorse and call a partici-
   pant in the crime as a res gestae witness in the trial of an
   aider and abettor.

3. CRIMINAL LAW—EVIDENCE—ACCOMPLICE'S ADMISSIONS—PRIOR UN-
   CONTESTED TESTIMONY.

   Allowing an accomplice of the defendant to testify that he had
   pled guilty to the armed robbery for which the defendant was
   being tried as an aider and abettor was not reversible error
   where similar testimony was already in evidence.

4. CRIMINAL LAW—IMPROPER REMARKS BY PROSECUTOR—PREJUDICE.

   Remarks by the prosecutor, in his summation to the jury, in
   the form of statements of fact concerning the character of

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur, Robbery § 14 et seq., § 25.
[2] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
  58 Am Jur 2d, New Trial § 41.
[3] 30 Am Jur 2d, Evidence § 1148 et seq.
[4] 53 Am Jur, Trial §§ 504, 506.
[5] 53 Am Jur, Trial § 24.
  21 Am Jur 2d, Criminal Law ;§ 288 et seq.
[6] 21 Am Jur 2d, Criminal Law § 297.
[7] 53 Am Jur, Trial § 908 et seq.

the defendant do not require reversal of defendant's conviction where the remarks, viewed in the context of the entire summation, were not prejudicial, and where the court repeatedly admonished the jury to determine the facts from what it heard from witnesses, not from attorneys.

5. CRIMINAL LAW—CONSTITUTIONAL LAW—PRESENCE AT TRIAL.

The constitutional right of an accused to be present at all stages of his trial exists only when his presence has a relation, reasonably substantial, to fullness of opportunity to defend against the charge.

6. CRIMINAL LAW—CONSTITUTIONAL LAW—PRESENCE AT TRIAL—CONFERENCES.

The failure to have the defendant present at a conference did not inhibit his ability to defend the charge against him where the conference was merely to discuss possible courses of action in response to a note from a juror that she was being coerced by the other 11 jurors into agreeing to a verdict of guilty, defendant's attorney was present at the conference, and no agreement was reached on a course of action at the conference.

7. CRIMINAL LAW—JURY-COERCION—INVESTIGATION BY THE COURT.

A strong public policy protects the privacy of the jury room, and the failure of the trial court to take any action upon receiving a letter from one of the jurors saying that she was being coerced by the other jurors into agreeing to a verdict of guilty did not deny the defendant his right to an impartial verdict where the court polled the jury, observed the complaining juror, and made a finding on the record that she did not appear agitated.

Appeal from Calhoun, Creighton R. Coleman, J. Submitted Division 3 October 7, 1971, at Marquette. (Docket No. 9049.) Decided November 22, 1971.

Lyle C. Brown was convicted of aiding and abetting an armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Stanley Everett*, Prosecuting Attorney, for the people.

Lyle C. Brown, *in propria persona.*

Before: FITZGERALD, P. J., and BRONSON and T. M. BURNS, JJ.

BRONSON, J.   Defendant was convicted of aiding and abetting an armed robbery (MCLA § 750.529 [Stat Ann 1971 Cum Supp § 28.797]) by a jury in the Calhoun County Circuit Court.  He was sentenced to a term of five to ten years.  This is an appeal of right.

On September 2, 1968, three armed men entered Win Schuler's Restaurant in Marshall, Michigan, and after tying up the employees, stole in excess of $21,000.  Defendant was arrested on September 23, 1969, and charged with aiding and abetting an armed robbery.

Defendant's trial was held January 7 to 9, 1970. During the jury deliberations, the following letter was sent to the trial judge by juror number 2:

"Judge Coleman.  I am Juror No. 2.  I am the only one who pleads not guilty!  This is my belief.  I have eleven people against me or what I feel—I will not and cannot change my plea.  No one can make me— they are all mad—this is my belief—will I be forced to plea something I do not wish—please help me? I'm scared—Juror No. 2."

The trial judge immediately notified both attorneys and a conference was held in chambers.  No agreement on a course of action was reached.  A bailiff was sent to ask the jury if they could reach a verdict.  They requested a few additional minutes. About ten minutes later, the jury announced they had reached a verdict.  A verdict of guilty was announced.  Defendant's attorney then asked that the jury be polled and the following occurred:

"Juror No. 2, Judith A. Brown, is your verdict as stated by the foreman?

"*Juror Brown:* Yes, it is."

All the other jurors answered in the affirmative. In his finding made at defendant's attorney's request, the trial judge stated that he had observed juror number 2 when the verdict was announced and during the polling. She did not appear agitated, upset or unsure. He found the verdict was unanimous and accepted it. Defendant raises six issues on appeal. We will discuss them *seriatim.*

1) Can a defendant be bound over for trial on a charge of aiding and abetting an armed robbery when all the elements of armed robbery are not present as to defendant?

Defendant argues that since there was no showing that he knew a gun was present or was to be used in the robbery he could not be bound over for the crime charged. Jack Vitale testified at the preliminary examination that he came to Michigan to commit the robbery; that defendant had set up the robbery by giving information on the building, banking procedure, and who would be present; that defendant received 10% of the proceeds; and that defendant dumped the gun used, along with other materials and clothing, in a wooded area following the robbery.

The purpose of a preliminary examination is "to offer proof that an offense not cognizable by a justice of the peace has been committed, and there is probable cause to believe the defendant guilty thereof", *People* v. *Medley* (1954), 339 Mich 486, 492. Based on the evidence there was ample grounds, supported by the circumstances, for believing defendant guilty as an aider and abettor of the crime charged. He was therefore chargeable as a princi-

pal to armed robbery.  MCLA § 767.39 (Stat Ann 1954 Rev § 28.979).

2) Did the trial court err in refusing defendant's request that the other participants in the crime be made available to testify as *res gestae* witnesses?

It is the settled law in this state that the prosecution has no obligation to indorse and call a participant in the crime as a *res gestae* witness. *People* v. *Everett* (1970), 27 Mich App 120.  See, also, *People* v. *Van Alstine* (1885), 57 Mich 69; *People* v. *Resh* (1895), 107 Mich 251; *People* v. *Virgil Brown* (1969), 15 Mich App 600; *People* v. *Geer* (1970), 22 Mich App 47.  Defendant's request was properly denied.

3) Did the trial judge err in allowing a witness to testify, over objection, that he had pled guilty to the same offense?

The defendant argues that allowing Jack Vitale to testify that he had pled guilty to armed robbery made him appear guilty by association and was therefore prejudicial.  Defendant relies on Judge LEVIN's dissent in *People* v. *Marra* (1970), 27 Mich App 1.  In that case the defendant was tried for abortion and conspiracy to commit abortion.  An accomplice testified to the existence of the conspiracy and that she had pled guilty to the crime.  The majority found no error in the admission of her plea since she was called to establish the conspiracy.  We need not decide the question.

During examination of Jack Vitale, prior to defendant's objection, the following occurred:

"*Q*. Mr. Vitale, why did you come to the State of Michigan?

"*A*. To plead guilty to this charge."

When defendant raised his objection, similar unobjected-to testimony was in evidence before the jury.

Even if admitting the testimony was error, it is not reversible.

4) Did the prosecutor, in his closing argument, make prejudicial remarks which require reversal even though no objection was raised by defendant's counsel?

The prosecutor made the following remarks during his closing argument:

"Mr. Brown looks like a nice, decent sort of chap. I'm sure he has a respectable business, a nice wife, maybe even a couple of kids, but it's another side of Lyle Brown you have seen here in the past three days, we have seen the little man wanting to be the big man, we have seen Lyle Brown's other side, we have seen the fingerman Lyle Brown, the big operator in the City of Battle Creek bringing in specialists from Chicago. I don't think the character witnesses know that side of Lyle Brown."

In *People* v. *Ignofo* (1946), 315 Mich 626, the Michigan Supreme Court held it was reversible error for a prosecutor to make a statement of fact in his arguments. The error there was such that it could not be cured by instruction. In the instant case, defendant argues that in the context of the argument the inference was highly prejudicial to him as it was backed by the prestige of the prosecutor's office. We have considered the prejudicial remarks in the context of the entire summation and do not find them prejudicial. *People* v. *David Smith* (1969), 16 Mich App 198. In addition we note that the trial judge repeatedly admonished the jury that it was for it to determine the facts based on what it heard from witnesses, not from the attorneys.

5) Does defendant have a constitutional right to be present at a meeting with the trial judge, held in chambers, where his attorney is present?

Defendant argues that the failure to allow him to to be present at the meeting in chambers at which the note from juror number 2 was discussed denied him his constitutional right to be present at all stages of the trial. He relies on *People* v. *Medcoff* (1955), 344 Mich 108, and on the United States Supreme Court cases of *Hopt* v. *Utah* (1884), 110 US 574 (4 S Ct 202, 28 L Ed 262), and *Snyder* v. *Commonwealth of Massachusetts* (1933), 291 US 97 (54 S Ct 330, 78 L Ed 674).

*Medcoff* and *Hopt* give defendant a right to be present when a trial judge investigates outside interference with jury deliberations or juror bias. In the instant case, the trial judge did not make a personal investigation into juror number 2's note. In fact, an agreement as to what to do was never reached.

In *Snyder*, the United States Supreme Court held that a defendant had no right to be present when a jury view took place as that was not part of the trial. The Court held that the right existed only when defendant's presence has a relation, reasonably substantial, to fullness of opportunity to defend against the charge. The basis of the right is to guarantee that defendant will not be denied an opportunity to assert his other constitutional rights. This Court fails to see what right defendant has lost which inhibited his ability to fully defend the charge against him by not being at the meeting in question.

6) Did the trial judge err in failing to take affirmative action after receiving a note from one juror to the effect she was being coerced into finding defendant guilty?

Defendant contends that the trial judge's failure to investigate the juror's charges of coercion prevented him from receiving a fair, impartial and un-

prejudicial verdict. Principal reliance is placed on *People* v. *Levey* (1919), 206 Mich 129. That case held it was reversible error for a trial judge to fail to question the entire panel as to whether it could reach an impartial verdict after one juror had been approached on defendant's behalf.

The prosecutor counters by arguing that a juror may not impeach his own verdict once it is final. *In re Merriman's Appeal* (1896), 108 Mich 454. This argument makes much of the fact that when the jury returned its verdict, it was polled and all its members agreed on the verdict. This, however, is not a case of impeachment after the verdict has been finalized by polling the jury. The crucial question before us is whether the judge should have acted to insure that the jury could reach an impartial verdict when *internal* pressure exists in the jury room.

There is a strong public policy in this state protecting the privacy of the jury room. Both *Levey, supra,* and the cases cited by the prosecutor, *In re Merriman's Appeal, supra; People* v. *Pizzino* (1945), 313 Mich 97; *People* v. *Van Camp* (1959), 356 Mich 593, are based on this policy. The procedure followed by the trial judge of polling the jury after the verdict was announced and observing the juror in question during this time preserved the public policy in question while protecting the defendant's right to a verdict reached by 12 individuals. We find no error.

Affirmed.

All concurred.