PEOPLE v CLAYBON

Docket No. 58828. Submitted January 11, 1983, at Lansing.—Decided March 22, 1983.

Cleotha Claybon was found guilty of possession with intent to deliver less than 50 grams of cocaine by a jury in Washtenaw Circuit Court and was sentenced, Edward D. Deake, J. Defendant appeals. *Held:*

1. The trial court did not err when it denied defendant's motion to suppress evidence. Defendant's contention that the evidence was obtained as a result of an illegal search and seizure is without merit. Exigent circumstances existed and the police officers involved properly searched defendant, albeit without a warrant.

2. Defendant's contention that the trial court erred in ruling that evidence of other drugs found on defendant and in his basement was admissible is rejected. The admission of evidence that defendant possessed heroin was not reversible error because overwhelming testimony existed to convict defendant of possession with intent to deliver cocaine.

3. The redirect examination of defendant's daughter by the prosecutor was proper and not prejudicial to defendant's case.

4. The prosecutor's impeachment of the testimony given by defendant's daughter was proper.

Affirmed.

1. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — REASONABLENESS.

A search and seizure without a warrant is per se unreasonable

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures § 35 *et seq.*
[2] 68 Am Jur 2d, Searches and Seizures § 44.
[3] 29 Am Jur 2d, Evidence § 298 *et seq.*
[4] 5 Am Jur 2d, Appeal and Error § 880 *et seq.*
[5] 29 Am Jur 2d, Evidence § 493.
  30 Am Jur 2d, Evidence § 1094.
[6] 81 Am Jur 2d, Witnesses § 478 *et seq.*
[7] 81 Am Jur 2d, Witnesses § 599.
[8] 81 Am Jur 2d, Witnesses § 596 *et seq.*

unless shown to fall within one of the various exceptions to the warrant requirement.

2. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — PROBABLE CAUSE — EXIGENT CIRCUMSTANCES.

The "exigent circumstances" exception to the rule that a search and seizure without a warrant is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement provides that when the police have probable cause to believe that a search of a certain place will produce specific evidence of a specific crime there is no need for a warrant if the police also have probable cause to believe that an immediate search without a warrant is necessary in order to: 1) protect the officers or others, 2) prevent the loss or destruction of evidence, or 3) prevent the escape of the accused.

3. EVIDENCE — SIMILAR ACTS EVIDENCE.

The process by which evidence of similar acts of a defendant is properly introduced involves direct proof of three propositions from which a fourth is inferable and thus proved circumstantially; they are that: 1) the manner in which the criminal act in question or some significant aspect of it was performed bore certain distinguishing, peculiar, or special characteristics, 2) certain specific similar acts performed contemporaneously with or prior to or subsequently to the act in question bore the same distinguishing, peculiar, or special characteristics, 3) the similar acts were performed by the defendant, and 4) accordingly, the crime in question was committed by the defendant.

4. APPEAL — EVIDENCE — SIMILAR ACTS EVIDENCE.

A trial court's decision to allow testimony on similar acts into evidence will not be reversed on appeal unless the court abused its discretion.

5. EVIDENCE — HEARSAY.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted and is inadmissible except as provided by the Rules of Evidence (MRE 801[c], 802).

6. EVIDENCE — DIRECT EXAMINATION — CROSS-EXAMINATION — RULES OF EVIDENCE.

The Rules of Evidence govern the scope of direct and cross-examination and provide trial courts with the discretion to control the presentation of evidence in order to ascertain the truth, avoid a waste of time, and protect witnesses from undue embarrassment; furthermore, the rules provide that a witness

may be cross-examined on any matter relevant to the case and, if a matter is not testified to on direct examination, the judge may limit cross-examination on that issue (MRE 611).

7. EVIDENCE — INCONSISTENT STATEMENTS — IMPEACHMENT.

Testimony is admissible for purposes of impeachment to show previous contradictory or inconsistent statements on matters material to the issues at bar; evidence of such statements may be received only for purposes of impeachment and not as substantive evidence of guilt.

8. EVIDENCE — INCONSISTENT STATEMENTS — IMPEACHMENT — FOUNDATION.

A proper foundation must be laid before testimony is offered as to the contradictory statements of a witness by interrogating the witness as to the time and place of the statement and the person to whom it was alleged to have been made; once a foundation is laid and a witness denies or neither admits nor denies making the alleged statement, his testimony may be impeached by the proof of the statement.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*Norman Fell,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and H. W. MOES,* JJ.

PER CURIAM. Defendant was found guilty by a jury of possession with intent to deliver less than 50 grams of a controlled substance (cocaine). MCL 333.7401; MSA 14.15(7401). Defendant was sentenced to a prison term of from 5 to 20 years. He appeals as of right.

Prior to trial, defendant moved to suppress evidence (cocaine) found in his pockets as the product of an illegal search and seizure. The trial judge denied defendant's request, finding that there was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

probable cause to believe that a felony had been committed and probable cause to believe that due to exigent circumstances an immediate search of defendant was necessary. The prosecutor moved to introduce, under the similar acts rule of evidence, the heroin found in defendant's pockets and in his basement when defendant and his home were searched. The trial court, without objection from defendant, granted the motion.

The evidence produced at trial revealed that, in the early morning hours of December 25, 1981, the Ypsilanti Police Department received a telephone call purportedly made by defendant's wife, Joann Claybon. Mrs. Claybon allegedly reported that her husband was selling cocaine out of the basement of their home. When two officers from the police department arrived, they were admitted into the home by Mrs. Claybon. Patricia Hoskins, defendant's adult daughter, was present when the officers arrived. Mrs. Claybon told the officers that defendant had sold cocaine from their basement and that he had some in his pockets. The officers, after noticing a bulge in defendant's pockets, told defendant to empty them. Defendant refused. One officer reached into defendant's pockets and pulled out $91 in cash, 22 folded envelopes containing a white substance and plastic packages containing a white powdery substance. Defendant's daughter led one of the officers downstairs where he found a paper bag containing mirrors, strainers, measuring spoons, cotton balls, syringes, bottle caps, and nylon stockings.

Patricia Hoskins testified that she took an officer downstairs but did not point out the bag containing defendant's drug paraphernalia. Hoskins stated that the officer found it. On direct examination, Hoskins was asked whether she could recall

telling the officer that defendant and his friends used the basement to shoot up heroin and cocaine. She stated that she did not remember talking to the officer, but that her mother may have made the statement. Several times throughout the prosecutor's direct examination, Hoskins was asked to try to recall whether she had made any statements to the police officers. After each question, Hoskins replied in the negative.

Officer Lawrence Wilkins of the Ypsilanti Police Department testified that, when he entered the house, defendant and Mrs. Claybon were involved in a heated argument. Mrs. Claybon threw a glass at defendant, hitting him in the head. Officer Wilkins testified, over a defense objection, that Hoskins told him that her father was dealing in cocaine and making it downstairs in the basement. After she led him downstairs, Hoskins walked to the far wall of the basement, picked up a grocery bag, and handed it to the officer. She also directed the officer over to the washer-dryer area where Hoskins told him that "junkies shoot up there". An account ledger was discovered in the basement listing amounts ranging from $50 to $900 owed to defendant. The ledger also listed the number of "bags" given to each person. Defendant was not arrested that night because, in the officer's opinion, an arrest could easily be completed after a determination that the confiscated paraphernalia contained a controlled substance.

Dr. David Burke of the Michigan State Police testified that he analyzed the packets found on defendant's person. Some of the packets contained heroin, and others contained cocaine. Of the substances found in the basement, Dr. Burke stated that one bag contained heroin. Burke was unable to confirm the presence of heroin in this package beyond a reasonable doubt.

I

The trial court denied defendant's motion to suppress evidence, finding that the officers were invited into the house and that reference was made to cocaine in defendant's pockets, thus supplying the necessary probable cause to search. The court further found that exigent circumstances existed for an immediate search because the evidence could have been easily destroyed.

It has been held that a search and seizure without a warrant is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement. *People v Dugan,* 102 Mich App 497, 503; 302 NW2d 209 (1980), *lv den* 411 Mich 989 (1981). The exigent circumstances exception provides that when an officer has probable cause to believe that a search of a certain place will produce specific evidence of that crime, there is no need for a warrant if the officer also has probable cause to believe that an immediate warrantless search is necessary in order to: (1) protect the officer or others, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the accused. *Dugan, supra,* p 503.

Defendant contends that no exigent circumstances existed to justify a warrantless search. He suggests that, because two officers were present at the scene, one officer could have stayed while the other secured the necessary warrant. The existence of exigent circumstances inherently depends on a case-by-case determination. *People v Beachman,* 98 Mich App 544, 554; 296 NW2d 305 (1980). In *People v Warner,* 401 Mich 186, 196, 207; 258 NW2d 385 (1977), the Court found that exigent circumstances existed when a telephone operator overheard one party say, " 'I've got drugs' ". The other party responded that he would be there in

15 minutes. The Court held that the "urgency of the situation, * * * in addition to the nature and potential destructibility of drugs, make this * * * type of case [one] presenting sufficient exigent circumstances to obviate the necessity for a warrant". *Warner, supra,* p 207.

The officers properly searched defendant in this case. The trial judge did not err when he found exigent circumstances existed and admitted the evidence at trial. When the two officers entered the Claybon residence, an argument was in progress. Mrs. Claybon threw a glass at defendant and hit him in the head. Mrs. Claybon accused defendant of selling cocaine from their basement. She also stated that defendant possessed cocaine in his pocket at that particular moment. This statement gave the officers probable cause to search defendant. The officers requested that defendant empty his pockets. Defendant refused. Although the officers did not fear for their lives, there was probable cause to believe that an immediate warrantless search was required. The use or destruction of the cocaine was more than likely. If the officers had left to obtain a search warrant, the drugs probably would have been disposed of in some manner.

Defendant suggests that one officer should have left the premises and obtained a search warrant while the other guarded defendant and his family. This issue was discussed in *People v Hopko,* 79 Mich App 611; 262 NW2d 877 (1977), *lv den* 402 Mich 950o (1978). There, police officers entered the property of a cotenant and seized 54 marijuana plants growing on the property.

"Though marijuana plants, unlike automobiles, do not run away, they are nevertheless quickly removed by pulling them from the ground. Thus, to a certain extent, exigent circumstances existed. Since defendant

was present in his downstairs apartment all during the time the two officers were conducting the investigation, the danger existed that had the officers left to obtain a warrant, the defendant could remove the evidence. Although one officer could have remained on guard while the other went for a warrant, such a requirement would be unreasonable on these facts." *Hopko, supra,* p 624.

In our case, it would have been unreasonable to leave one officer at the scene. When the officers arrived, the occupants of the house were engaged in an argument. As the situation became more heated, defendant's wife picked up a glass and threw it at defendant, striking him in the forehead. One officer would have had to guard three angry persons. The immediate search was more reasonable in terms of the safety of the officers and effective preservation of the evidence than a search after obtaining a warrant and placing a guard in the home of the defendant. Defendant's claim of error on this issue is without merit.

## II

When defendant was searched, 22 packets, some containing heroin and some containing cocaine, were found in his pockets. Shortly thereafter, more heroin was found in defendant's basement. Prior to trial, the prosecutor moved to introduce, under the similar acts rule of evidence, testimony concerning the heroin that was found. See MRE 404(b). The prosecutor argued that the presence of the heroin showed defendant's intent to possess and deliver cocaine. The trial court ruled that the evidence of other drugs found on defendant and in his basement was admissible into evidence.

Before similar acts testimony can be admitted into evidence, it must be probative of one of the

purposes specified in MRE 404(b) and that purpose must be "in issue" in the case. *People v Wagner,* 104 Mich App 169, 178; 304 NW2d 517 (1981).

" 'The evidential process by which similar acts evidence is properly introduced involves direct proof of three propositions from which a fourth is inferable and thus proved circumstantially. They are:

" '1) that the manner in which the criminal act in question or some significant aspect of it was performed bore certain distinguishing, peculiar or special characteristics;

" '2) that certain specific similar acts, performed contemporaneously with or prior to or subsequently to the act in question, bore the same distinguishing, peculiar or special characteristics;

" '3) that the similar acts were performed by the defendant; and

" '4) that, accordingly, the crime in question was committed by the defendant.' " *Wagner, supra,* pp 178-179, quoting *People v Major,* 407 Mich 394, 398; 285 NW2d 660 (1979).

In *People v Wimbley,* 108 Mich App 527, 537; 310 NW2d 449 (1981), the prosecution offered evidence that, following a cocaine transaction, a second packet was exchanged between the defendant and an undercover officer. Contemporaneously with the exchange, the defendant stated that the second packet's contents would "knock the head off" the undercover agent. An expert witness testified that the substance in the second packet was not a controlled substance. The court allowed the jury to hear testimony of the transaction, including evidence that a second packet was exchanged. The Court stated that the testimony of the second packet went to the issue of the defendant's knowledge and intent which were material elements of the crime of delivery of a controlled substance.

In *People v Koehler,* 54 Mich App 624, 634; 221 NW2d 398 (1974), the defendant was convicted of delivery of heroin. The court admitted into evidence testimony of an undercover officer's attempted purchase from the defendant of another controlled substance, phencyclidine (PCP).

"[I]t is arguable that the testimony regarding the PCP was admissible at trial to show defendant's scheme, plan, or intent as a dealer in illegal narcotic drugs.

\* \* \*

"[D]efendant's showing of the brown tablets to Officer Huston, his statement that these tablets were PCP, and his further remark that he could not sell any of these to Huston because he was holding them for another, constituted a vital portion of the res gestae of the crime and were properly put before the jury as an integral portion of the entire transaction." *Koehler, supra,* pp 634-635.

It was established that our defendant possessed cocaine and heroin, both in his pockets and in his basement, at the time of the search. Defendant, however, was only charged with the crime of possession with intent to deliver cocaine. Defendant was not charged with possession with intent to deliver heroin. This is not a case, as in *Wimbley* or *Koehler,* where the possession of the other drugs directly related to the charge of possession with intent to deliver. Defendant did not make a statement indicating that he was holding the heroin for someone else, nor did he attempt to sell the heroin to the officers. There was no evidence produced at trial that would tend to show that possession of heroin was necessary in attempting to deliver cocaine. There was no evidence produced at

trial that could lead one to believe that defendant sold or delivered heroin. It appears only that defendant possessed the drug. Whether defendant's possession of heroin was for personal use or for delivery was undetermined at trial. If for personal use, admission of the evidence was error. Defendant did not deny that he used heroin and cocaine. Use was not the issue in this case.

However, the trial court's decision to allow the admission of similar acts testimony into evidence will not be reversed on appeal unless the court abused its discretion. *People v Humble,* 108 Mich App 777, 778; 310 NW2d 878 (1981). Upon considering the broad discretion given to the trial judge in the admission or exclusion of physical or testimonial evidence, we cannot say that the judge abused his discretion to the extent of committing reversible error by admitting testimony of defendant's possession of heroin. The evidence as to defendant's possession with intent to deliver cocaine was substantial. Defendant admitted possessing the drugs. A paper bag was found in defendant's basement containing syringes, sponges, nylon stockings, measuring spoons, bottle caps, and cotton balls, all possibly related to either the use or the distribution of a controlled substance. A book was found in defendant's basement listing names, amounts due, and the number of "bags" sold to each person. Finally, just after the officers arrived at defendant's house, defendant's wife stated that defendant had drugs in his possession and that he sold drugs from the basement of their home. The admission of the testimony that defendant possessed heroin was not reversible error because overwhelming testimony existed to convict defendant of possession with intent to deliver cocaine. This claim of error is denied.

III

On direct examination of Patricia Hoskins the prosecutor asked: "I realize a good deal of time has passed, Miss Hoskins. Do you recall telling the officer that he, Mr. Claybon[,] and his friends used the basement to shoot up heroin and cocaine?" Hoskins replied: "I don't remember saying that." The prosecutor asked: "Could you have said that?" Hoskins answered: "My mother may have said it. * * *" On cross-examination, defense counsel sought to establish the fact that defendant's wife was frantic when the officers arrived. Defense counsel suggested that Mrs. Claybon may have been so upset that she was unaware of what she was saying. Hoskins testified that her mother made many allegations, most of which Hoskins could not verify. On redirect examination, the prosecutor sought to inquire into the allegations made by Mrs. Claybon prior to the search of defendant. Defense counsel objected. The prosecutor responded that the matters the witness was being questioned about were originally brought out on cross-examination by defendant. The prosecutor ended the discussion abruptly by stating that he did not feel like arguing about it any further. He had no further questions, and Hoskins was excused as a witness.

Defense counsel argued that the prosecutor attempted to refresh Hoskins' recollection with an out-of-court hearsay statement. The out-of-court statement made by defendant's wife indicated that defendant was selling cocaine out of the basement of their home. Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. MRE 801(c). Hearsay evidence is

inadmissible except as provided by the Rules of Evidence. MRE 802.

Hoskins told the prosecutor on direct examination that her mother may have stated to the police that defendant and others used the basement of the home "to shoot up heroin and cocaine". Her answer was unresponsive to the question. The unresponsive testimony in this case does not appear to have come from a question calculated to elicit inadmissible evidence. The prosecutor at this time made no attempt to capitalize on the statement and shortly thereafter discontinued questioning Hoskins. Further, in this segment of questions, the statement objected to was not admitted into evidence. The prosecutor did not attempt to elicit a hearsay statement from Hoskins.

On cross-examination, defense counsel suggested that defendant's wife made untrue statements pertaining to defendant because she was angry. Hoskins, on cross-examination, stated that she could not verify the truth of those statements or allegations. Because the defense counsel questioned Hoskins as to the allegations her mother had made, the prosecutor felt that the door had been opened and, therefore, that he was justified in questioning Hoskins as to the allegations.

MRE 611 governs the scope of direct and cross-examination. It provides the trial court with the discretion to control the presentation of evidence in order to ascertain the truth, avoid a waste of time, and protect witnesses from undue embarrassment. MRE 611(a). It further provides that a witness may be cross-examined on any matter relevant to the case; and, if a matter is not testified to on direct examination, the judge may limit cross-examination on that issue. MRE 611(b). Defense counsel initiated the questioning as to the out-of-

court statement made by defendant's wife. On redirect examination of this uncooperative witness, the prosecutor was allowed to question her regarding those matters brought up by the defense on cross-examination. We cannot say the trial jduge abused his discretion.

Further, the statement cannot be hearsay because it was not offered to prove the truth of the matter asserted. On redirect examination, when Hoskins was finally allowed to state what her mother's allegations were, *i.e.,* that "junk" would be found in the basement, the prosecutor was trying to determine why the police officers were brought downstairs. The statement was not offered to prove that "junk would be found in the basement".

Lastly, the probative value of this statement outweighed its prejudicial effect. The statements in question were directly probative of the intent of defendant. Any prejudicial effect was outweighed by the abundance of evidence produced by the prosecutor as to the crime of possession with intent to deliver cocaine. A ledger found containing names, money owed, and numbers of "bags" sold to others was particularly incriminating. Heroin and cocaine were found on defendant's person and in his basement. Substantial amounts of narcotic paraphernalia were found in the basement of defendant's house. The presence of this evidence was highly inconsistent with defendant's contention at trial, *i.e.,* that he was a mere narcotic user and not a seller. The redirect examination conducted by the prosecutor was proper and not prejudicial to defendant's case.

## IV

When the prosecutor called Hoskins as a wit-

ness, he asked her whether she had told a police officer what the basement was used for. She could not remember. The prosecutor again asked Hoskins if she remembered stating to a police officer that defendant and his friends used the basement to shoot up heroin and cocaine. She stated that she could not remember. After further questioning, the prosecutor again asked Hoskins if she remembered anything that she may have said to the officer. Again, she replied negatively. The next witness called was Officer Lawrence Wilkins. Over defense objection, the officer was allowed, on the grounds of impeachment, to testify that Hoskins had stated that her father was dealing in cocaine and making it downstairs in the basement.

Testimony is admissible for purposes of impeachment to show previous contradictory or inconsistent statements on matters material to the issues at bar. Evidence of such statements may be received only for purposes of impeachment and not as substantive evidence of guilt. Before testimony is offered as to the contradictory statements of a witness, a proper foundation must be laid by interrogating the witness as to the time and place of the statement and the person to whom it was alleged to have been made. See *People v Gunne,* 65 Mich App 216, 220; 237 NW2d 256 (1975).[1] Once a foundation is laid and a witness denies or neither admits nor denies making the alleged statement, his testimony may be impeached by the proof of the statement. In *People v Coates,* 40 Mich App 212; 198 NW2d 837 (1972), the Court allowed the prosecutor to impeach an accomplice through the use of prior inconsistent statements. The accomplice's repeated responses to the questions asked

[1] The Court's decision to reverse defendant's conviction on the basis of a different issue was vacated in *People v Gunne (On Rehearing),* 66 Mich App 318; 239 NW2d 603 (1975), *lv den* 400 Mich 802 (1977).

were that he could not recall any questions or answers he had previously given to the police. In *People v Dozier,* 22 Mich App 528; 177 NW2d 694 (1970), *lv den* 383 Mich 826 (1970), the prosecutor was allowed to ask defendant's mother about a statement she had made to a policewoman. Defendant's mother on direct examination stated that she did not remember giving such a statement. After the court found that the prosecutor's preliminary questions were more than adequate to refresh the mother's memory, the prosecutor was allowed to impeach the witness by offering testimony of the officer to whom the statements were made.

In this case, the prosecutor's preliminary questions were adequate. He succeeded in laying a proper foundation before he impeached Hoskins. The prosecutor asked Hoskins some preliminary questions for refreshment purposes. He asked her whether she had said anything to the officers while they were investigating the scene. The prosecutor made it quite clear on at least three occasions that she had mentioned something to an officer pertaining to her father's habits. All three times she stated that she did not remember making any statements. A proper foundation had been laid for the introduction of the police officer's testimony to impeach the witness.

Additionally, these statements were more probative than prejudicial because they were directly related to the issue of defendant's intent. Further, we note that the statements were allowable pursuant to MRE 607(2)(A).

Affirmed.