PEOPLE v GAFFNEY

1. DRUGS AND NARCOTICS—POSSESSION—USABLE AMOUNT.

Illegal possession of a proscribed narcotic is established if the quantity, in whatever amount, can reasonably be inferred to be a remnant of a larger usable amount.

2. DRUGS AND NARCOTICS—UNLAWFUL SALE—POSSESSION OF NARCOTICS—USABLE AMOUNT.

The usable amount doctrine formulated in a case of illegal possession of narcotics is inapplicable in a prosecution for unlawful sale.

3. WITNESSES—CRIMINAL LAW—ABSENTEE WITNESSES—UNIFORM STATUTE—PROSECUTOR'S DUTY.

It is the obligation of the prosecution, when an indorsed res gestae witness is outside the state and the prosecution knows what court of record, if any, in the involved state has jurisdiction to compel attendance, to present to a judge of that court process comporting in form and substance with the requirements of the Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings; this requirement is effective on March 1, 1974, the date of release of the opinion so holding (MCLA 767.91 et seq.).

4. WITNESSES—CRIMINAL LAW—ABSENTEE WITNESSES—PROSECUTOR'S DUTY—ADJOURNMENT.

It is the duty of the prosecution to move for an adjournment where information as to the location of an indorsed res gestae witness without this state comes too late to institute proceedings under the Uniform Act to Secure Attendance of Witnesses from Without a State in Criminal Proceedings, and the adjournment should be granted of right subject to the defendant's right to waive production or the attempt to produce the witness, in which event error may not be assigned for lack of due diligence; this requirement is effective on March 1, 1974, the date of release of the opinion so holding.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 25 Am Jur 2d, Drugs, Narcotics and Poison §§ 16, 17, 21.
[3–5] 58 Am Jur, Witnesses § 8 et seq.

5. WITNESSES—CRIMINAL LAW—ABSENTEE WITNESSES—PROSECUTOR'S
DUTY—DISCRETION.

Excusing the production of an indorsed res gestae witness from
out of state was not an abuse of discretion and no reversible
error occurred where the missing witness was a police informer
who had not previously testified, had refused to furnish his
Florida address or phone number, and refused to come volun-
tarily although he had previously promised to do so, and the
record reveals diligent attempts to produce the witness; the law
did not make it mandatory at the time of the trial that the
prosecutor apply to the court in another state for process to
compel return of a witness to this state.

Appeal from Bay, Leon R. Dardas, J. Submitted
Division 1 December 7, 1973, at Lansing. (Docket
No. 14454.) Decided March 1, 1974. Leave to ap-
peal applied for.

Garnell Gaffney was convicted of the unlawful
sale of heroin. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Eugene C. Pen-
zien,* Prosecuting Attorney, for the people.

*Stuart M. Israel,* Assistant State Appellate De-
fender, for defendant.

Before: DANHOF, P. J., and BRONSON and
O'HARA,* JJ.

O'HARA, J. This is an appeal of right from a jury
conviction of the charged offense of the sale of
heroin. We omit the citation because the statute
has since been repealed and replaced.

Five errors are assigned: First, the impermissi-
ble excuse by the trial judge of the production of a
res gestae witness because the prosecution failed
to demonstrate due diligence in an effort to obtain

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

his presence. Second, the failure of the trial court to submit to the jury the "usable amount" test.

Third, erroneous instruction by reason of the trial court's reference to the unlawful *use* of heroin. Fourth, violation of defendant's Fifth Amendment rights by improper reference to his option not to take the witness stand. Fifth, prosecutorial misconduct in the closing argument to the jury.

We address ourselves to them in inverse order. We find no reversible error under assignment five. Discussion would needlessly extend the opinion and add nothing of precedential value to settled case law.

Assignment four was not preserved for review, and is not of that degree of gravity to move this Court to consider it.

Assignment three is disposed of on the same ground as assignment four.

Assignment number two concerns what has come to be known in our criminal case law as the "usable amount" doctrine.

The phrase was used by this Court in *People v Harrington,* 33 Mich App 548, 550; 190 NW2d 343, 344 (1971). *Harrington* was a case of first impression. The opinion authored by Judge QUINN very carefully pointed out that "[w]ithout local precedent, this Court is free to adopt the minority or majority view or to reject both."

The *Harrington* court characterized the "minority view" as the holding by California and Texas that illegal possession of a proscribed narcotic required proof of "[a] quantity to be sufficient for the drug's common use". 33 Mich App at 549; 190 NW2d at 344. The Court rejected the requirement as a restriction on efficient law enforcement.

The "majority view" so-called that the *quantity* of the illegally possessed drug was immaterial also

was rejected as so broad as to encourage infringement upon individual rights.

The Court then set up its mid-ground test, that if the quantity in *whatever amount* could be reasonably inferred to have been a remnant of a larger usable amount, illegal possession was established.

*Harrington's* rule, formulated in a possession case, should be limited in its application to cases of close fact similarity and to charges of possession. It is inapplicable to the case at bar which is a prosecution for sale.

We reject the contention that the *Harrington* rule was extended to sale cases by *People v Jones,* 38 Mich App 512; 196 NW2d 817 (1972).

We do so first because the *Jones* panel explicitly distinguished *Harrington* on the facts. Additionally, it incorporated a requirement which might generally be characterized as a guilty knowledge and an intent factor. No such question is presented in the instant case. Six packets of some substance were purchased in this case, four of which contained heroin in some amount.

We think we do a disservice to the efforts to enforce drug control legislation by legislating judicially into statutes a requirement of qualitative and quantitative analysis of the proscribed substance.

We find no reversible error in assignment number two.

Thus we address ourselves to assignment one as also presenting a meritorious issue requiring decisional discussion.

The question is the degree of diligence required of the prosecution to produce, or alternatively to be relieved of producing a res gestae witness who is without the state. It is a murky area. This is so

because of the infinity of factual variations under which the issue can arise. Decisions abound dealing with it on a single case basis. Others discuss it on a precedential principle basis. Nothing is to be gained by a review of fine line delineation. Hence, we refine the issue here to deal with the question of whether it is the burden of the people in all cases involving the production of an indorsed res gestae witness who is in another state to utilize the uniform act to secure the attendance of a witness who is without this state. MCLA 767.91 *et seq.;* MSA 28.1023(191) *et seq.*

It would be idle and even detrimental to the administration of justice to answer with an unequivocal "yes" or "no". Manifestly various fact settings mandate the allowance of the exercise of a degree of sound judicial discretion by trial judges. A requirement that a bare showing that an indorsed res gestae witness is without the state and no more obligates the state to set in motion the machinery of the statute would result in a pointless and futile expenditure of time, effort and money.

As the intermediate appellate court of this state, we are devoid of rule-making power to deal with the problem. Thus, that route is closed to us. Additionally, since we function in panels of three judges, and no one panel can bind another, we cannot, as can the Supreme Court, compel uniform compliance by trial courts in cases where panels take inconsistent positions.

So what we say here, as we understand it, will bind trial courts unless the Supreme Court stays the effect of the ruling and subsequently overrules it, or unless another panel of this Court takes a decisional position *contra,* thus giving the trial bench an alternative.

We here hold that where an indorsed res gestae witness is without this state and the prosecution knows what court of record, if any, in the involved state has jurisdiction to compel attendance, it is the obligation of the prosecution to present to a judge of that court process comporting in form and in substance with the requirements of the uniform statute.

If the information as to the location of the witness comes to the prosecution too late to institute proceedings and obtain a judicial determination before the time set for trial it is the further burden of the prosecution to move for an adjournment on this ground, which should be granted by the trial judge of right.

All of the foregoing is, of course, subject to the right of the defendant to waive on the record the necessity of the production or attempt to produce the witness. In that event the trial will go forward as scheduled and error may not be assigned for lack of due diligence. We hold the foregoing requirements to be effective as of the date of the release of this opinion.

By eschewing retroactivity, we perforce address ourselves to the issue of due diligence on the part of the state in this case under prior law.

The involved witness here was a police informer. He is claimed to have been a witness to the arranged sale. His testimony could hardly be more crucial to defendant. When the prosecutor advised the court of his inability to produce the indorsed witness named Branch and asked to be relieved of so doing the learned trial judge immediately inquired whether that witness had previously testified and whether any of such transcribed testimony would be offered. It is not disputed that Branch had not previously testified. Defense coun-

sel then requested the court that the officer in charge of the case be required to testify as to his efforts to obtain the presence of the witness. He did so. His testimony reveals that Branch formerly lived in Arkansas. In November of 1971 airline tickets had been purchased for him, since he had agreed to come to Michigan voluntarily. After these arrangements had been made, the trial was adjourned on motion of defendant. Meanwhile the witness Branch moved to Florida and was married. On January 11, 1972, the trial having been scheduled for January 25, 1972, Branch was reached by phone at a number furnished by a Michigan relative of his. Branch in this phone conversation refused to give his Florida address or his own phone number. On the night before trial was to commence the prosecution obtained a Florida phone number and address for him. Branch refused to come to Michigan voluntarily. The police officer revealed his efforts in every detail.

The trial judge having first determined that no constitutional confrontation question was presented because no previous testimony had been given by Branch granted the prosecutor's motion.

Prior to our present holding this case would have been controlled by prior cases including *People v Serra,* 301 Mich 124; 3 NW2d 35 (1942). In substance *Serra* adopted the "means at hand" test.

The Court held:

"The Michigan law does not make it mandatory that the prosecution apply to the court in another State for process to compel return of a witness to this State." *Serra,* at 131; 3 NW2d at 38.

Thus the prosecution may well inquire how this intermediate court imposes a greater obligation than does our Supreme Court by an opinion as yet not expressly overruled.

We answer that the *Serra* case was decided at a time when fewer states had enacted a uniform statute. Also the *Serra* court noted some sustained challenges in other states to its constitutionality. As of this date we note that only Georgia and Alabama have not adopted the uniform act. Its constitutionality is not challenged in this case. Thus we think *Serra* is sufficiently distinguishable upon its facts and to a degree in legal principle to permit us to act as we have herein.

We have expressly made our holding here prospective from a fixed date. We think it would be prejudicial to the sound administration of criminal justice to require the prosecution or the trial judge to have anticipated a new requirement. We hold no abuse of discretion or reversible legal error occured under assignment of error number one, the excusing of the indorsed res gestae witness.

The conviction is affirmed.

All concurred.