PEOPLE v DOUGLAS

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PROSECU-
   TORS—DUTY TO PRODUCE.

   The prosecution is generally obligated to produce res gestae
   witnesses in order to protect the defendant from false accusa-
   tions by insuring that there is disclosure of the whole of the res
   gestae and affording the defendant an opportunity for cross-
   examination.

2. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PROSECU-
   TORS—DUE DILIGENCE—DISCRETION.

   The question of whether the prosecution exercised due diligence
   in attempting to produce a res gestae witness rests within the
   trial judge's discretion and his decision will not be set aside
   unless a clear abuse of discretion is shown.

3. APPEAL AND ERROR—COURTS—DISCRETION—ABUSE OF DISCRETION.

   An abuse of discretion by a court involves far more than a
   difference in judicial opinion between the trial and appellate
   courts where the exercise of discretion turns upon a factual
   determination made by the trier of the facts, since the term
   *discretion* involves the idea of choice, of an exercise of the will,
   of a determination made between competing considerations.

4. APPEAL AND ERROR—COURTS—DISCRETION—ABUSE OF DISCRETION.

   An abuse of discretion by a trial court in making a determination
   of fact requires the reviewing court to find that the result is so
   palpably and grossly violative of fact and logic that it evidences
   not the exercise of will but perversity of will, not the exercise

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5–7] 29 Am Jur 2d, Evidence § 708 *et seq.*
[3, 4] 4 Am Jur 2d, Appeal and Error § 18.
   5 Am Jur 2d, Appeal and Error § 774.
[8, 9] 58 Am Jur, Witnesses § 734 *et seq.*
[9] 5 Am Jur 2d, Appeal and Error § 545.
[10] 29 Am Jur 2d, Evidence § 783 *et seq.*
   40 Am Jur 2d, Homicide § 416.
[11] 5 Am Jur 2d, Appeal and Error § 841.
[12] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26–32.

of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

5. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PROSECU-
TORS—DUE DILIGENCE—DISCRETION.

Excusing the production of a res gestae witness on the grounds that the prosecution had exercised due diligence to produce the witness was not an abuse of discretion where the record shows that the witness had been subpoened and previously appeared at one prior trial date; there was no serious indication until the commencement of the eventual trial that it would be necessary to make further inquiries to locate the witness; a police officer had visited the witness's home, had left a card in the door and had spoken to a man on the premises; police had checked the witness's place of employment, the jail, and a club the witness was known to frequent, and police had made appropriate inquiries among several informants as to where the witness might be located.

6. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PROSECU-
TORS—DUTY—OUT-OF-STATE WITNESSES—STATUTES—PROSPEC-
TIVE APPLICATION—CASE PRECEDENT.

The obligation imposed upon the prosecution by the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings by application to the courts in another jurisdiction to compel the return of a res gestae witness is prospective only, as of March 1, 1974, the date of the decision so holding (MCLA 767.91 et seq.).

7. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—PROSECU-
TORS—DUTY—DUE DILIGENCE—OUT-OF-STATE WITNESSES.

There was no abuse of discretion by the trial judge in finding due diligence by the prosecution in attempting to produce a witness and excusing the production of the witness; the prosecution was not duty-bound to make a general inquiry to the authorities in New York City concerning the whereabouts of a missing res gestae witness where the prosecution possessed only a tip that the witness was believed to be in New York City, the witness was an accused criminal who had fled Michigan to avoid answering for his misdeeds, and it was not realistic to expect that a general inquiry could have been sent to a city the size of New York a few days prior to a pending trial and obtain a response within sufficient time to secure the attendance of the involved witness at a trial in Michigan, presuming the out-of-state police could locate the witness.

8. WITNESSES—IMPEACHMENT—PRIOR OFFENSES.

Impeachment of a witness through the admission of testimony on the witness's prior offenses is limited to instances where both arrest and conviction of the witness have taken place.

9. WITNESSES—IMPEACHMENT—PRIOR OFFENSES—OBJECTIONS—PRESERVING QUESTION.

The question of the allegedly erroneous conduct of a prosecutor was not preserved for review in the absence of an objection where defense counsel, during cross-examination of a prosecution witness, improperly questioned the witness concerning the witness's prior arrests and criminal charges and the prosecutor then followed up the question on redirect examination by eliciting the fact that the defense counsel had represented the witness on prior occasions.

10. HOMICIDE—FELONY MURDER—EVIDENCE—MATERIALITY—PHOTOGRAPHS—IDENTITY OF PERPETRATOR.

Admission of photographs of a defendant's hand taken on the day of his arrest for felony murder, which purported to show a cut found on the defendant's hand supposedly caused by the recoil action of a shotgun, was proper where the evidence indisputably indicated that the decedent was killed by a shotgun blast triggered either by the defendant or by an unknown third party, there was evidence already before the jury that the defendant had a cut on the hand at the scene of the crime and was taken to a hospital for treatment and had the cut on his hand when arrested, and this physical evidence was highly material to the issue of the identity of the person who fired the shotgun.

11. APPEAL AND ERROR—EVIDENCE—PRESERVING QUESTION.

The Court of Appeals will not review evidentiary questions unless timely raised in the court below.

12. WITNESSES—EXPERT WITNESSES—DISCRETION.

The sufficiency of the background of a witness to qualify him as an expert witness is a matter of trial court discretion.

Appeal from Oakland, Farrell E. Roberts, J. Submitted June 13, 1975, at Lansing. (Docket No. 21058.) Decided October 14, 1975.

Larry Douglas was convicted of felony murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Carlton R. Roeser,* Assistant Appellate Counsel, for the people.

*Campbell, Kurzman, Leitman, Plunkett & Roggenbaum* (by *Parvin Lee, Jr.),* for defendant.

Before: ALLEN, P. J., and D. F. WALSH and O'HARA,* JJ.

O'HARA, J. Defendant was charged with felony murder[1] arising out of the perpetration or attempt to perpetrate a robbery and was found guilty as charged by the jury. He was sentenced to life imprisonment and now appeals of right.

The initial assignment of error by defendant pertains to a claim that the trial court committed reversible error when it excused the production of two res gestae witnesses on the grounds that the people had exercised due diligence to produce the involved witnesses.

In general the prosecution is obligated to produce res gestae witnesses in order to protect the defendant from false accusations by insuring that there is disclosure of the whole of the res gestae and affording the defendant an opportunity for cross-examination. *People v Raider,* 256 Mich 131; 239 NW 387 (1931). It is equally well settled that the question of due diligence rests within the trial judge's discretion and his decision will not be set aside unless a clear abuse is shown. *People v Bersine,* 48 Mich App 295; 210 NW2d 501 (1973). In *People v Wolschon,* 2 Mich App 186, 188; 139

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.316; MSA 28.548.

NW2d 123 (1966), the Court quoting from *Spalding v Spalding,* 355 Mich 382, 384–385; 94 NW2d 810 (1959), had this to say about the terms "discretion" and "abuse of discretion":

" 'Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and the appellate courts. The term discretion itself involves the idea of choice, of our exercise of will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias.' "

The two witnesses in the present case were Margaret Fowlkes and Andrew Swift. Both witnesses had been subpoenaed and had appeared on at least one prior trial date. Neither witness ultimately appeared on the eventual trial date. The trial court thereupon issued bench warrants for both individuals as material witnesses in the present case.

At an evidentiary hearing, Officer Feneley of the Pontiac Police Department related in detail the extent of his personal and the department's general efforts to locate witnesses Fowlkes and Swift.

In particular as to witness Fowlkes there was no serious indication until the commencement of trial that it would be necessary to make further inquiries in order to locate her. The officer testified that he had visited Margaret Fowlkes' home on several occasions, had left a card in the door and had spoken to a man on the premises. He also checked out both places where the officer had information

she might be employed. One of the companies proved to be the witness's employer but she was not there. Further checks were made at the jail and a club the woman was known to frequent. He made appropriate inquiries among several informants as to where she might be located. Officer Feneley also secured the assistance of several other police officers to locate the witness during the time in question.

We see nothing approaching an abuse of discretion by the trial judge in reasonably excusing the production of witness Fowlkes under the circumstances.

The situation with respect to Andrew Swift is a bit more complex. As noted previously, he too had shown up on previously scheduled trial dates. But between the second trial date and the day on which the case was actually tried the witness was arrested and charged with possession of a controlled substance. On the date set for his examination on the charge in district court witness Swift did not appear. A bench warrant was issued at that time. This was several days prior to the trial scheduled in the instant case.

The same officer who had conducted the search for Margaret Fowlkes also sought to locate Andrew Swift. He testified to having visited Swift's last known address six times and also having checked at another house where the witness was known to stay. Officer Feneley further related that he had left his card at both homes. There were also checks made at the jail and a local tavern which Swift was known to patronize. Other police officers in the department were personally informed that Officer Feneley was trying to locate this witness. Then, a few days prior to trial, these inquiries uncovered a "tip" that the elusive Mr. Swift was "believed to be" in New York City.

It is the position of the defendant that the people were obligated to follow up this information as to the res gestae witness's alleged presence in New York City by energyzing the machinery created by the uniform act to secure the attendance of an out-of-state witness. MCLA 767.91 *et seq.;* MSA 28.1023(191) *et seq.* This omission or oversight is urged upon us as being reversible error.

We do not agree with the contention for reasons which we will now discuss.

In *People v Gaffney,* 51 Mich App 526; 215 NW2d 587 (1974), *lv den* 392 Mich 806 (1974), we expressly held that the new obligation imposed upon the people by the uniform act to apply to the courts in another jurisdiction to compel return of a witness was *prospective* only, as of the release date of *Gaffney* (March 1, 1974). The fact that defendant was tried prior to that date precludes him from claiming entitlement to the benefit of the *Gaffney* rule.[2] Hence, the people need not have invoked the uniform act in order to secure the presence of witness Swift at the trial in the instant case. Parenthetically, we also note that even if the decisional date in *Gaffney* were such as to be applicable to the instant case it would be of no assistance to defendant. In situations where the people are possessed of nothing more definitive than a tip that a witness being sought was "believed to be" in New York City, it would indeed be a needless expenditure of time and money to command that the prosecution seek the statutory compulsion of the witness's presence. See generally, *Gaffney.*

---

[2] To the extent defendant relies on *People v Mitchell,* 48 Mich App 361; 210 NW2d 509 (1973), that reliance is misplaced. *Mitchell* is distinguishable on the facts. In addition, the judge who authored *Mitchell* also signed the opinion in *People v Gaffney,* 51 Mich App 526; 215 NW2d 587 (1974), *lv den,* 392 Mich 806 (1974).

Nor do we believe that under the circumstances of this case that the people were duty-bound to make a general inquiry to authorities in New York on the basis of the scant information which was at hand and the slim if not ethereal hope that someone there might know the whereabouts of witness Swift. The reluctant witness was not merely undesirous of testifying but, as noted heretofore, was an accused criminal who had fled the jurisdiction to avoid answering for his misdeeds. We hardly think it likely that he bothered to file a change of address card to apprise other persons of his specific whereabouts. It would be completely exalting form over substance to realistically expect that a general inquiry could have been sent to a city the size of New York a few days prior to a pending trial in the forlorn hope that someone in the police department would forthwith respond, to what of necessity for them must be a low priority communication, within sufficient time to secure the attendance of the involved witness at an imminent trial in Michigan (assuming the extremely unlikely event that the witness's presence and location were actually known to the out-of-state police).

We see no abuse of discretion, as defined in *Wolschon, supra,* on the part of the trial judge in finding the existence of due diligence by the people to produce witness Swift nor, as stated heretofore, the other res gestae witness.

The second assignment of error by defendant asserts that the prosecutor impermissibly made reference to a prior attorney-client relationship between a prosecution witness and defense counsel as proscribed by, *inter alia, People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969). The people deny this assertion and instead contend that the

conduct of defendant's attorney was highly improper since defense counsel allegedly used his knowledge obtained from the prior attorney-client relationship with the prosecution witness for the benefit of his present client, defendant herein. The people conclude that defendant, having opened the door and having obtained the benefit of this improper line of questioning, should not now complain of the prosecutor pursuing the matter further on redirect-examination.

It was during the cross-examination of the principal prosecution witness that defense counsel began a line of questioning the substance of which dealt with what her normal procedure was when she was arrested or charged with the commission of a crime. The prosecutor on redirect examination then asked the witness if defense counsel had not represented her on prior occasions when she had been arrested or faced criminal charges. The witness replied in the affirmative. Counsel for both parties then became embroiled in a general dispute over this matter and the subject was soon dropped.

Our careful reading of the somewhat ambiguous exchanges between defense counsel and the witness renders it difficult to ascertain the precise source of information on which defense counsel relied in order to impeach the testimony of his former client. But there was an obvious infirmity in the conduct of defense counsel which arose out of his overly aggressive questioning of the witness wherein he sought to attack her credibility.

We note that the effect of trial counsel's questioning about *arrests* and *charges* none too subtlely brought to the attention of the jury certain matters which *may* not have resulted in convic-

tions.[3] We read the questions as being of highly dubious propriety in light of Supreme Court authority limiting impeachment to instances where both an arrest *and* conviction has taken place. See *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973). The fact that the prosecutor then followed up the initial improvident questioning of defense counsel does not bring the people's conduct within the ambit of *Brocato, supra.* Nor was there any objection to the question of the prosecutor. Hence the alleged error was not preserved for review. *People v Eroh,* 47 Mich App 669; 209 NW2d 832 (1973).

The defendant next complains that the trial court erroneously admitted certain photographs taken of the defendant's hand on the day of his arrest. The assertion is made that the photographs improperly and speculatively linked the supposed recoil action of a shotgun with a cut found on defendant-appellant's hand between the thumb and first finger. More specifically, it is asserted that the materiality of the photographs was not shown and that the people also did not properly authenticate the photographs by laying a proper foundation as to their authenticity. Finally, defendant contends that a police officer was not qualified to give expert opinion evidence as to the recoil action of a sawed-off shotgun.

The evidence indisputably indicated that the decedent was killed by a shotgun blast triggered either by defendant or by an unknown third person. Any evidence helpful to determine which of them fired the gun would assist the jury in determining the central point in issue and photographic evidence is equally competent to show a material

[3] The prosecution witness was previously impeached on the basis of certain prior convictions but at the time in question she was queried solely about arrests and charges.

fact or condition. *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972). When these photographs were introduced there already was evidence before the jury that defendant had a cut on his hand at the scene of the crime, was taken to a hospital for treatment and had the cut on his hand when arrested. Thus, this physical evidence was, in fact, highly material to the identity of the "shooter" and the trial judge did not err in admitting the photographs over objections to their materiality.

Defense counsel did not object on the basis of lack of foundation, authentication, chain of custody or accuracy of the photographs and we thus follow the established rule that the Court of Appeals will not review evidentiary questions not timely raised below. *People v Belcher,* 29 Mich App 341; 185 NW2d 440 (1971).

Nor did the trial judge err in deciding, in effect, that the recoil action of a sawed-off shotgun was not a subject which might arguably be within the ordinary experience and knowledge of mankind. Since a sawed-off shotgun is illegal contraband it would not be reasonable to assume that even jurors who might be familiar with the operation of a shotgun would have knowledge or expertise with respect to the operation of such an illicit weapon.

Due to the illegal nature of the weapon involved in this case, the only persons who could possibly become experts legally would be police officers or police-related ballistics or forensic scientists. The experienced police officer who was the source of the expert testimony in the instant case testified that he had fired sawed-off shotguns and was familiar with their recoil characteristics. The sufficiency of the background of a witness to qualify him as an expert is a matter of trial court discre-

tion. See generally, *People v O'Leary,* 6 Mich App 115; 148 NW2d 516 (1967). No abuse of discretion appears herein.

We find no reversible error with respect to any of the issues raised by the defendant-appellant. Consequently, we affirm the verdict of the jury.