*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 19, 2023

Plaintiff-Appellee,

v

No. 359350
Kent Circuit Court
LC No. 21-000328-FC

KENNETH DURELL BYRD,

Defendant-Appellant.

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of one count of first-degree felony murder, MCL 750.316(1)(b); one count armed robbery, MCL 750.529; one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f; and three counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life in prison without parole. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant's conviction stems from the murder of Ante Webb in an armed robbery gone wrong. Webb died of a gunshot to the abdomen after meeting with defendant for a drug deal in the basement laundry room of an apartment complex. Defendant and Webb had communicated over the phone about a drug deal throughout the day of the murder. Defendant had borrowed his wife's and friend's, Davonte Armstrong-Andrews, cell phones to contact Webb throughout the evening. After meeting, defendant and Webb engaged in a struggle during which defendant shot Webb.

Parts of Darron Williams's, defendant's brother, testimony pursuant to an investigative subpoena were deemed to be patently, obvious perjury. Williams subsequently agreed to testify under a second investigative subpoena to cure his earlier perjury and he agreed to testify at trial against his brother. In exchange, the prosecution agreed not to charge Williams with perjury and provide him with use immunity for any incriminating statements concerning the homicide. The prosecution also agreed to dismiss a pending heroin possession charge.

-1-

Williams testified during defendant's preliminary examination that he was present at the apartment complex the day of the murder and saw defendant wearing a black baseball cap. He further testified that he saw defendant making phone calls on a borrowed cell phone the day of the murder. He testified that, after the shooting, defendant admitted that he robbed and shot the victim. Williams also testified that he helped defendant by taking and selling the gun used in the crime.

At the time of the trial, Williams resided in Texas. In the weeks before the trial, the prosecution mailed a subpoena to Williams. The prosecution also called Williams to arrange for him to fly to Grand Rapids to testify. The prosecution explained to him that it would pay his travel and lodging expenses and then return him to Texas as soon as possible. Williams's hesitancy about returning to Michigan caused the prosecution to contact Williams's attorney to encourage him to testify. Williams ultimately declined to return to the state of Michigan for the trial. The prosecution informed Williams through his attorney that his failure to attend the trial would be interpreted as a breach of his plea agreement.

The trial court found that the prosecution made a good-faith effort to procure Williams's testimony for trial and permitted the prosecution to read Williams's testimony taken during the preliminary examination into the record at trial. The jury found defendant guilty on all six charges. Defendant now appeals.

## II. ANALYSIS

Defendant argues that he was denied his Sixth Amendment right to confront a witness because the trial court admitted Williams's preliminary examination testimony over defendant's objection. We disagree.

We review for an abuse of discretion the trial court's decision to admit evidence. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). "A trial court abuses its discretion when it selects an outcome that was not in the range of reasonable and principles outcomes." *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011). Whether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that we review de novo. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011). This Court applies harmless error analysis to Confrontation Clause errors. *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005). "A constitutional error is harmless if [it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Dendel (On Second Remand)*, 289 Mich App 445, 475; 797 NW2d 645 (2010) (quotation marks and citation omitted; alteration in original).

The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. Michigan's Constitution provides the same protections as the United States Constitution. Const 1963, art 1, § 20; *Fackelman*, 489 Mich at 525. The introduction of out-of-court testimonial statements violates the Confrontation Clause unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant. *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

The out-of-state witness was declared unavailable under MRE 804(a)(5), which states:

> (a) Definition of Unavailability. "Unavailable as a witness" includes situations in which the declarant—
>
> * * *
>
> (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown.

"The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*.

Defendant argues that the witness's unavailability resulted from the prosecution's failure to use the procedure under the uniform act to secure attendance of witnesses from without the state in criminal proceedings, MCL 767.91 *et seq.*, and therefore, the prosecution could not establish that reasonable, good-faith efforts were made to locate the witness. Defendant relies on *Barber v Page*, 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255 (1968), and *Brumley v Wingard*, 269 F3d 629 (CA 6 2001),[1] for his argument that the uniform act must be followed before the trial court can find a witness unavailable. Neither of these cases stands for the proposition that the uniform act is the sole procedure by which an out-of-state witness must be procured.

Our Supreme Court has held that the prosecution is not obliged to apply to the courts of another state for process to compel production of a witness in order to show due diligence. *People v Serra*, 301 Mich 124, 131; 3 NW2d 35 (1942). A line of cases follow the *Serra* Court's holding. See *People v Kim*, 124 Mich App 421, 424-425; 335 NW2d 58 (1983); *People v McCullough*, 51 Mich App 534; 215 NW2d 774 (1974); *People v Ivy*, 11 Mich App 427; 161 NW2d 403 (1968).

We recognize that a line of cases stated the contrary view. See *People v Gaffney*, 51 Mich App 526, 531; 215 NW2d 587 (1974); *People v Freeland*, 101 Mich App 501, 508-510; 300 NW2d 616 (1980), *People v Biondo*, 89 Mich App 96; 279 NW2d 330 (1979). Although the *Gaffney* Court questioned the validity of *Serra*, it stated that it was devoid of rulemaking power and that its decision was only binding on trial courts. *Gaffney*, 51 Mich App at 530. *Gaffney*, however, is not binding precedent. See MCR 7.215(J)(1). Accordingly, we decline to follow *Gaffney* and its progeny.

The record indicates that the prosecution made a good-faith effort to procure Williams for trial. The trial court, therefore, did not abuse its discretion when it ruled at trial that the prosecution

---

[1] *Barber* is binding caselaw on this Court as a decision of the United States Supreme Court. See *People v Gillam*, 479 Mich 253, 261; 734 NW2d 585 (2007). *Brumley* is not binding precedent, but it may be considered persuasive. *Id*.

made a good-faith effort to procure the out-of-state witness and permitted the prosecution to present Williams's preliminary examination testimony which had been subject to cross-examination.

Moreover, even if we were to find that the trial court erred by allowing Williams's preliminary hearing testimony at trial, the error was harmless. See *Shepherd*, 472 Mich at 348. The record reflects that the prosecution presented to the jury ample evidence other than Williams's testimony that supported defendant's conviction. The witness testimony established that defendant arranged a drug deal with the victim with the intent of robbing him, but the robbery went wrong and defendant shot the victim. Afterward, defendant told multiple people about the robbery.

Makala Belaski testified that she saw defendant talk with the victim in the apartment complex parking lot the night of the evening. She further stated that the victim told her that he planned to go sell drugs to defendant. Davonte Armstrong-Andrews testified that he let defendant use his cell phone several times throughout the evening; he did not know the victim, and he did not make any calls to the victim on his cell phone. Defendant did not give Armstrong-Andrews his phone back until after 8:00 p.m. This testimony is supported by the phone records admitted at trial. The phone records showed that Armstrong-Andrews's phone was used throughout the night of the murder to contact the victim for a drug deal. Additionally, calls were made to the victim from Oquia Byrd's phone.

Several witnesses testified after the murder that defendant admitted to them that he shot the victim. Marcellus McCoy testified that he saw defendant the night of the murder. McCoy testified that defendant told him that he planned to rob the victim, but the robbery went wrong and the victim was shot. Armstrong-Andrews also testified that defendant told him that he was going to rob the victim and that he had shot the victim. Armstrong-Andrews also saw a Facebook Messenger message from defendant to Kevin Harmon in which he stated, "Call me bitch," and "Ante Webb is dead." Defendant argues that Armstrong-Andrews's testimony is not credible because he had to cure his perjured statements during the investigative subpoena. The jury was aware of this fact and made its own credibility determinations. We will not interfere with the credibility determinations of the jury. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

The physical evidence further corroborated the jury's findings. The prosecution presented evidence of a drug deal gone wrong that occurred in the laundry room. The victim was found with marijuana on his person and a digital scale on a dryer. Each of the witnesses testified that defendant wore a dark colored hat the night of the murder. DNA testing of the black hat found at the crime scene determined it to be 3.3 trillion times likely to belong to defendant. Additionally, the prosecution introduced at trial a photograph that showed defendant wearing the black hat on his Facebook account.

The facts to which Williams testified in his preliminary examination were corroborated by other witnesses at trial. Williams and Armstrong-Andrews both testified that defendant told them that he shot the victim. Belaski and Armstrong-Andrews both testified that they saw defendant at the apartment complex the night of the murder. Armstrong-Andrews corroborated Williams's testimony that Williams helped get rid of the murder weapon. Armstrong-Andrews testified that Williams came to the apartment complex to get defendant's gun and that he went with Williams

to get the gun. Further, McCoy testified that Williams had the gun used in the crime and that defendant attempted to get the gun back.

Even without Williams's preliminary examination testimony, the jury heard corroborating evidence independently sufficient to convict defendant. That evidence makes it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the claimed error. *Dendel (On Second Remand)*, 289 Mich App at 475. Therefore, if the trial court erred by allowing the testimony to be read into the record, the error was harmless.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford